## IN RE TAXES UNION MILL COMPANY.

### No. 1069.

APPEAL FROM TAX APPEAL COURT, THIRD CIRCUIT.

ARGUED MAY 1, 2, 1918.                    DECIDED MAY 17, 1918.

COKE, C. J., QUARLES AND KEMP, JJ.

APPEAL AND ERROR.

Where a taxpayer appeals from the decision of the tax appeal court fixing the value of his property at more than his return but at less than the assessment, and the assessor does not appeal, held: That under these circumstances the valuation fixed by the tax appeal court constitutes the maximum valuation which this court could place upon the property.

TAXATION—*weight of decision of tax appeal court.*

The decision of a tax appeal court in fixing values is presumed
to be correct and should not be lightly overturned.

OPINION OF THE COURT BY KEMP, J.

The Union Mill Company returned its property for tax-
ation as an enterprise for profit as of January 1, 1917, at
$200,000. The tax assessor assessed it at $450,000, from
which assessment the company appealed to the tax appeal
court of its district and that court fixed the value at $402,-
835.86, from which the company has appealed to this court.

The attorney general representing the assessor has ad-
vanced the argument that, notwithstanding the fact that
the assessor has not appealed from the decision of the tax
appeal court, we can, if we find the value fixed by the tax
appeal court too low, place the value back at the amount at
which the assessor placed it; that the hearing before this
court is in effect a trial *de novo* and that we are limited in
fixing the value only by the assessment.

We do not sustain this contention. In *Tax Assessment
Appeals,* 11 Haw. 235, 236, the court said: "A tax appeal
occupies about the same position as an equity appeal in this
court. * * * Of course, this court can in no case place
a valuation outside of the limits fixed by the appeals."
This is a direct holding by this court against the attorney
general's contention.

In the absence of an appeal by the assessor he must be
regarded as accepting on behalf of the government, for
which he acts, the valuation found by the tax appeal court
and we are of the opinion, and hold, that under these cir-
cumstances the valuation found by the tax appeal court
constitutes the maximum valuation which this court is
authorized to place upon the property.

The properties of the company are assessed in this case
as a whole, said properties being combined in an enterprise

for profit, but it becomes important to ascertain the true value of the separate items of tangible assets making up the whole in order to aid us in arriving at the true value of the enterprise as a whole.

At the hearing before the tax appeal court it was agreed that the tangible assets of the company other than (a) its growing crops, (b) land owned and (c) land leased by the company were returned at their full value and that such value was $137,728.90. It was also agreed that the profits of the company for a number of years past have been such that if capitalized the value arrived at would not exceed $150,000. It therefore becomes necessary for us to examine the evidence as to the value of these disputed items in order to determine the aggregate value of tangible assets of the company which is one of the most important things to be considered in arriving at the value of the company's property as a whole.

The tax appeal court found the value of the 1917 crop of cane to be $99,320 and the value of the 1918 crop to be $59,576.96. The company has adopted these findings as correct and we see no reason for reviewing the court's finding.

The company's return shows that it owns 1453.9 acres of cane land upon which it placed a valuation of $50,015.15. The tax appeal court found the value of this land to be $101,710. The assessor and his deputy have testified to a valuation of $181,625, while the manager and secretary of the company have testified to a valuation of $50,015.15. Each of these witnesses has attempted to demonstrate the correctness of his estimate. The court did not accept either opinion, but, basing its opinion upon the recent appraisement of 663 acres of adjacent land by the government at an average value of $70 per acre, as testified to by the company's attorney, found the value of these lands to be $101,710.

The same witnesses, with the exception of the company's

attorney, have given their evidence as to the value of the leaseholds of the company, the assessor urging a valuation of $12,000, while the company's claim is that it is paying the full rental value of the land and that therefore its leaseholds have no value. As in the case of the fee simple holdings of the company the witnesses attempted to demonstrate the correctness of the conclusions reached but the court found neither one correct and fixed the value at $4500.

The tax appeal court accepted the agreement of the company and the assessor as to the value of its properties, other than those items the value of which is disputed, at $137,-728.90, to which it added the amounts found by it to be the value of the crops and land and thereby arrived at a valuation of $402,835.86, at which amount it fixed the assessment as a whole.

"This court has uniformly held that it does not reduce or increase the valuation made by a tax appeal court which appears to be fair and just, but allows it to stand unless shown to be erroneous, or based on a wrong theory or insufficient or defective data" (*Tax Assessor* v. *Wailuku Sugar Co.,* 18 Haw. 422, 423).

In this case, while a lower valuation by the tax appeal court might properly have been sustained, we do not feel at liberty upon the evidence to lower it. It is the duty of the tax appeal court to value the property in accordance with the facts before it, using its own common sense and its knowledge of existing conditions. The presumption is that the decision of the tax appeal court is correct and its findings of value should not be lightly overturned (*Hawi M. & P. Co.* v. *Forrest,* 21 Haw. 389; *Tax Assessor* v. *Wailuku Sugar Co., supra*).

We find nothing in the record requiring a reduction of the valuation.

The decision appealed from is therefore affirmed.

*W. L. Stanley* for the taxpayer.

*A. G. Smith,* Attorney General (*C. S. Franklin,* Deputy Attorney General, on the brief), for the assessor.