863 F.2d 617
 GREAT HAWAIIAN FINANCIAL CORPORATION, a Hawaii corporation,
Plaintiff- Appellant,
v.
Benjamin AIU; Leslie Berger; Dr. Donald Corbin; Fujoka
Investment Company; Iwao Kamemoto; Minoru Kanda; Minoru
Kimura; Kenichi Kondo; Clarence Kusumoto; Takeichi
Miyashiro; Toshiko Mizuha; Richard Nakahara; Noboru
Nakasone; Hideshi Niimi; Yoshi Nishimura; Yukitsugu
Nishimura; Norman Okamura; Kinzo Okumura; Roy Shigemura;
Kazuto Shimizu; Carl Shinoda; Kazuaki Tanaka; Masakazu
Tanaka; Tetsuo Tsutsuse; Gordon Uyeda, Trustee for Stacey
Uyeda; Iwao Watanabe; Francis Ako; Pyramid Investment
Co.; Maurice Karamatsu; Frank Ogawa; H.M. Sakoda;
Franklin Tokioka; Lionel Tokioka; Masayuki Tokioka; Chuck
G. Shima; Rodney Y. Inaba; Paiko, Inc.; Robert Oshiro;
Mrs. Albert Inaba; Masaru Uyeda; Hirotoshi Yamamoto;
Edward Yoshimasu, Defendants-Appellees.
GREAT HAWAIIAN FINANCIAL CORPORATION, a Hawaii corporation,
Plaintiff- Appellant,
v.
Benjamin AIU; Leslie Berger; Fujioka Investment Company;
Donald Corbin; Iwao Kamemoto; Minoru Kanda; Minoru
Kimura; Kenichi Kondo; Clarence Kusumoto; Takeichi
Miyashiro; Toshiko Mizuha; Richard Nakahara; Noboru
Nakasone; Hideshi Niimi; Yoshi Nishimura; Yukitsugu
Nishimura; Norman Okamura; Kinzo Okumura; Roy Shigemura;
Kazuto Shimizu; Carl Shinoda; Gordon Uyeda, Trustee for
Stacey Uyeda; Tetsuo Tsutsuse; Kazuaki Tanaka; Masakazu
Tanaka; Iwao Watanabe; Hirotoshi Yamamoto; Rodney Y.
Inaba; Paiko, Inc.; Pyramid Investment Co.; Norman N.
Inaba, Trustee for Shari Y. Inaba and Daryl H. Inaba; Chuck
G. Shima; Franklin Tokioka; Lionel Tokioka; Maurice
Karamatsu; Masayuki Tokioka; Frank Ogawa; Tom Kobuchi;
H.M. Sakoda; Myrtle Wong Hee, personal representative for
the estate of NG Sheong Hee; Mrs. Albert Inaba; Edward
Yoshimasu, Defendants-Appellees.
GREAT HAWAIIAN FINANCIAL CORPORATION, a Hawaii corporation,
Plaintiff-Appellant,
and
Damon, Key, Char & Bocken, a law corporation, Appellant,
v.
Benjamin AIU; Leslie Berger; Dr. Donald Corbin; Fujioka
Investment Company; Iwao Kamemoto; Minoru Kanda; Minoru
Kimura; Kenichi Kondo; Clarence Kusumoto; Takeichi
Miyashiro; Toshiko Mizuha; Richard Nakahara; Noboru
Nakasone; Hideshi Niimi; Yoshi Nishimura; Yukitsugu
Nishimura; Norman Okamura; Kinzo Okumura; Roy Shigemura;
Kazuto Shimizu; Carl Shinoda; Kazuaki Tanaka; Masakazu
Tanaka; Tetsuo Tsutsuse; Gordon Uyeda, Trustee for Stacey
Uyeda; Iwao Watanabe; Francis Ako; Pyramid Investment
Co.; Maurice Karamatsu; Frank Ogawa; H.M. Sakoda;
Franklin Tokioka; Lionel Tokioka; Masayuki Tokioka; Chuck
G. Shima; Rodney Y. Inaba; Paiko, Inc.; Robert Oshiro;
Mrs. Albert Inaba; Masaru Uyeda; Hirotoshi Yamamoto;
Edward Yoshimasu, Defendants-Appellees.
 Nos. 87-2370, 87-2577 and 87-2702.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted April 7, 1988.
Memorandum Sept. 13, 1988.
Opinion Dec. 14, 1988.
 
 R. Charles Bocken, Damon, Key, Char & Bocken, Honolulu, Hawaii, for plaintiff-appellant.
 Arthur B. Reinwald, Reinwald, O'Connor, Marrack & Hoskins, Honolulu, Hawaii, for defendants-appellees.
 Appeal from the United States District Court for the District of Hawaii.
 Before WALLACE, REINHARDT and NOONAN, Jr., Circuit Judges.
 ORDER
 The memorandum disposition filed herein on September 13, 1988 is redesignated a per curiam opinion.
 OPINION
 PER CURIAM:
 
 
 1
 Great Hawaiian Financial Corporation (Great Hawaiian) appeals the district court's entry of summary judgment in favor of various former members of the general partnership known as Hilolani Acres Joint Venture (partners). Great Hawaiian also appeals the district court's orders awarding attorneys' fees under Hawaii law to the partners as the prevailing parties in an assumption action and sanctioning Great Hawaiian under Fed.R.Civ.P. 11 for filing a frivolous motion for reconsideration. We have jurisdiction pursuant to 28 U.S.C. Sec. 1291. We reverse the orders granting summary judgment and imposing sanctions, and vacate the order awarding attorneys' fees to the partners.
 
 
 2
 We review the district court's order granting summary judgment de novo. Ashton v. Cory, 780 F.2d 816, 818 (9th Cir.1986) (Ashton ). Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). We view the materials on file in the light most favorable to the nonmoving party. Ashton, 780 F.2d at 818. The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 2514, 91 L.Ed.2d 202 (1986) (Anderson ). If the moving party satisfies this burden, the opponent must set forth specific facts showing that there remains a genuine issue for trial. Fed.R.Civ.P. 56(e). However, no defense to an insufficient showing is required. Neely v. St. Paul Fire & Marine Insurance Co., 584 F.2d 341, 344 (9th Cir.1978); see also Anderson, 477 U.S. at 250, 257, 106 S.Ct. at 2511, 2514 (a party opposing a properly supported motion for summary judgment must set forth specific facts showing that there is a genuine issue for trial).
 
 
 3
 The district court based its determination that the partners were entitled to judgment as a matter of law on its finding that two events caused a dissolution of the partnership in 1971: first, the withdrawal of three of the four managing partners, and second, the transfer of title to partnership assets to Great Hawaiian Mortgage Corporation (Great Hawaiian Mortgage). Great Hawaiian argues that neither the departure of several managing partners nor the transfer of title justifies the district court's conclusion that no issue of fact remained regarding the existence of a partnership between the partners after 1971.
 
 
 4
 Our determination of the issues is based on Hawaiian law. Although Hawaiian statutes and case law do not answer the questions raised in their entirety, there is sufficient other law, which we believe Hawaii would probably accept. Thus, certification of legal questions to the Hawaii Supreme Court is unnecessary at this stage.
 
 
 5
 Under Hawaii law, a partnership is defined as "an association (including a joint venture) of two or more persons to carry on as co-owners of a business for profit." Haw.Rev.Stat. Sec. 425-106. Whether a joint venture or partnership exists is normally a question of fact. Matter of O.W. Limited Partnership, 4 Haw.App. 487, 668 P.2d 56, 62 (1983). Under Hawaii law, a partnership may be found even in the absence of a formal contract between the parties. Id. (existence of joint venture depends upon conduct of the parties); Buffandeau v. Shin, 60 Haw. 280, 587 P.2d 1236, 1237 (1978) (per curiam) ("[T]here are no specific indices of partnership, although an agreement to share in the profits and losses of a business is weighty evidence thereof.").
 
 
 6
 Great Hawaiian presented significant probative evidence that the partners were engaged in an association for profit within the meaning of Hawaii partnership law during the period in which the loans were made. Great Hawaiian submitted the partners' joint venture agreement, under which the partners agreed to do business together as members of a joint venture formed for the purpose of "dealing with" certain real property owned by the joint venture. Great Hawaiian submitted evidence that the partnership continued to do business during the relevant period, including promissory notes signed by Inaba, a managing partner of the joint venture, on behalf of the joint venture. See Haw.Rev.Stat. Sec. 425-123(2) (continuation of business). Great Hawaiian also submitted evidence that the partners took tax deductions for losses incurred by the joint venture during a period spanning approximately two decades, including the 1974-76 period when the loans were made. These tax filings alone constitute significant evidence, as admissions of party opponents, that a general partnership existed during the relevant period. See Reddington v. Thomas, 45 N.C.App. 236, 262 S.E.2d 841, 843 (1980). In addition, Great Hawaiian submitted depositions of several of the defendant partners, in which various partners testified to their beliefs that they would still be entitled to a share of the venture's profits if it were ever to turn a profit. These statements, like the tax return information, constitute significant probative evidence that the partners continued to regard themselves as engaged in an association for profit long after the partnership allegedly dissolved.
 
 
 7
 In light of this evidence, the district court erred in concluding that there was no issue of material fact regarding the existence of a partnership during the relevant period of 1974-76. The evidence presented by the partners in support of their summary judgment motion did not establish that no partnership existed during the relevant period. At best, it established that there were genuine issues for trial regarding the continued existence of the partnership after the events of 1971.
 
 
 8
 For example, evidence that former managing partners Shima, Tokioka, and Yamamoto withdrew from the partnership in 1981 indicates that the original partnership including those partners was dissolved as to those partners. See Thomas v. American National Bank, 704 S.W.2d 321, 323-24 (Tex.1986); Adams v. Jarvis, 23 Wis.2d 453, 127 N.W.2d 400, 403 (1964) (Adams ); McKellar v. Bracewell, 473 S.W.2d 542, 549 (Ct.Civ.App.Tex.1971) (McKellar ) ("The withdrawal of a partner from apartnership operates to dissolve the partnership as to the withdrawing partner.... The resignation of [partners] effect[s] a dissolution of the partnership as to their interests in it ... [It] did not effect a common law dissolution of the entire firm."). However, it does not follow that the withdrawal of three partners necessarily affected the rights and obligations of the remaining partners. McKellar, 473 S.W.2d at 549; Adams, 127 N.W.2d at 403; see also Frett v. Benjamin, 187 F.2d 898, 900-01 (3d Cir.1951). This is especially true where, as here, the agreement addressed the withdrawal of members of the partnership and contemplated continuation of the business in spite of such withdrawals. Adams, 127 N.W.2d at 403; see also Crane & Bromberg on Partnership, Sec. 73, at 417-19 (1968) (withdrawal of partner need not result in dissolution of entire firm where partnership agreement contemplates changes in membership). In sum, the evidence concerning the withdrawal of three managing partners submitted in support of the partners' motion for summary judgment did not establish the absence of a disputed material fact regarding the continued existence of a partnership during the relevant period.
 
 
 9
 Similarly, evidence that the partners were merely "passive" participants who were unaware that three partners had withdrawn and that Inaba continued to represent the partnership did not establish the absence of genuine factual issues regarding the remaining partners' liability to repay the loans. Partnership law does not distinguish between "passive" general partners and "active" general partners. See Haw.Rev.Stat. Sec. 425-109(1) ("Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which the partner is a member binds the partnership...."); Crane & Bromberg on Partnership Sec. 24A, at 141-42 (a dormant partner "is nonetheless a partner, liable for firm obligations like other partners"). Moreover, an individual partner's ignorance of a particular event or transaction ordinarily does not relieve him of responsibility for an action undertaken on behalf of the partnership: "[n]otice to any partner of any matter relating to partnership affairs, and the knowledge of the partner acting in the particular matter ... operate as notice to or knowledge of the partnership...." Haw.Rev.Stat. Sec. 425-112. The district court thus erred in concluding that the withdrawal of some partners, together with the ignorance and passivity of the remaining partners, established the absence of any remaining factual issue regarding the partnership's continued existence and entitled the partners to judgment as a matter of law.
 
 
 10
 The district court also found that the assignment of partnership assets to Great Hawaiian Mortgage completed the sole undertaking for which the partnership was formed and thus caused its dissolution as a matter of law. The district court supported this determination by citing to Haw.Rev.Stat. Sec. 425-131(1)(a), which states that dissolution is caused "[b]y the termination of the definite term or particular undertaking specified in the agreement." Great Hawaiian argues that the transfer of title to Great Hawaiian Mortgage did not terminate the particular undertaking of the partnership.
 
 
 11
 The joint venture agreement provided that the partnership was formed for the purpose of "dealing with," not merely holding title to, the property in question. The assignment of the property did not terminate this undertaking. Under the development agreement between the joint venture and Great Hawaiian Mortgage, the partnership retained the right to receive 65% of net profits from development of the property and the right to regain legal title to the property on demand and without cost. The agreement also prohibited Great Hawaiian Mortgage from assigning or mortgaging developed lots without the prior written approval of the partnership. The development agreement thus clearly provided that the partnership, designated as the "owner" in the agreement, would continue to "deal with" and profit from the land in spite of the transfer of legal title to Great Hawaiian Mortgage. Moreover, evidence submitted by Great Hawaiian that the partners continued to reap tax benefits from their participation in the partnership subsequent to the transfer of title indicates that the partners continued to benefit from their undertaking during the relevant period. The district court thus erred in concluding that the transfer of legal title to Great Hawaiian Mortgage necessarily terminated the particular undertaking of the partnership within the meaning of Haw.Rev.Stat. Sec. 425-131(1)(a).
 
 
 12
 Because neither the withdrawal of the three partners nor the transfer of legal title established the absence of a genuine issue of material fact regarding the existence of the partnership during the period in which the loans were made, we reverse the order granting summary judgment to the defendants. Consequently, we also vacate the order granting attorneys' fees to the defendants as prevailing parties in the action in the district court. In addition, we reverse the order sanctioning Great Hawaiian for filing a frivolous motion for reconsideration of the district court's summary judgment order. The arguments raised in Great Hawaiian's motion were the same as those that now persuade us to reverse the district court's summary judgment order and thus were not frivolous within the meaning of Fed.R.Civ.P. 11.
 
 
 13
 Finally, Great Hawaiian urges us to address the question whether the district court erred in determining (albeit in dicta) that Great Hawaiian was not entitled to interest on its loans to the partnership. The district court based this ruling on its conclusion that Great Hawaiian, as a member of the partnership, should not be allowed to "profit" from its transactions with the partnership. The district court cited no authority in support of its statement that interest on a loan made to a partnership constitutes a "profit" within the meaning of Haw.Rev.Stat. Sec. 425-121(1). Nor did the district court attempt to distinguish Haw.Rev.Stat. Sec. 425-118(c), which provides that: "[a] partner, who in aid of the partnership makes any payment or advance beyond the amount of capital which he agreed to contribute, shall be paid interest from the date of the payment or advance." It would be premature, however, for us to decide whether Great Hawaiian is entitled to interest on the loans made in this case at this time. We therefore remand this question to the district court for further consideration. Similarly, we do not pass upon whether the 1971 property transfer and the Great Hawaiian loans were a fraud on the partnership. Those issues are not properly before us.
 
 
 14
 REVERSED AND REMANDED.